**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**EASTERN DIVISION**

**SHELLEY WILKERSON**                                              **PLAINTIFF**

**vs.**                                                                  **CIVIL ACTION NO. 1:10-CV-00305-SAA**

**MICHAEL J. ASTRUE,**
**COMMISSIONER OF SSA**                                      **DEFENDANT**

## **MEMORANDUM OPINION**

This case involves an application under 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of Social Security denying the application of plaintiff Shelley Wilkerson for period of disability (POD) and disability insurance benefits (DIB) under Sections 216(I) and 223 of the Social Security Act. Plaintiff protectively filed applications for POD and DIB on September 13, 2006, alleging disability beginning on July 31, 2006. Docket 6, p. 85-87.[1] Plaintiff's claim was denied initially (Docket 6, p. 59-62) and on reconsideration. Docket 6, p. 64-66. He filed a request for hearing (Docket 6, p. 69) and was represented by an attorney at the administrative hearing on March 12, 2008. Docket 6, p. 27-54. The Administrative Law Judge (ALJ) issued an unfavorable decision on September 24, 2008 (Docket 6, p. 16-26), and the Appeals Council denied plaintiff's request for a review on September 22, 2010. Docket 6, p. 6-9. Plaintiff filed the instant appeal from the ALJ's most recent decision, and it is now ripe for review. Because both parties have consented to have a magistrate judge conduct all the

---

[1]The Administrative Record in this case is found at Docket #6. All citations to the Administrative Record are to the Page Number at Docket Entry 6 and not to the original page numbers at the bottom of the page.

proceedings in this case under 28 U.S.C. § 636(c), the undersigned has the authority to issue this opinion and the accompanying final judgment.

I.
FACTS

Plaintiff was born on October 25, 1955 and was 50 years old at the alleged onset of his disability.[2] Docket 6, p.31. He completed one year of college (Docket 6, p. 121) and worked as a foreman or grounds supervisor at a maintenance facility for 29 years. Docket 6, p. 49. He claimed disability on his application due to heart disease (Docket 6, p. 115) and asserted the following combination of impairments at the hearing: tachycardia, aortic aneurysm with an angiography and removal of an aneurysm, possible dislocation of non union of sternum, hypertension, depression, degenerative joint disease of the knees, back and neck pain. Ex. 6, p. 31.

The ALJ determined that plaintiff suffered from "severe" impairments, including diseases of the aortic valve, status post knee surgery, affective mood disorder, personality disorder and substance abuse disorder (Docket 6, p. 18), but that his impairments did not meet or equal a Listing in 20 C.F.R. Part 404, Subpart P, App. 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526).[3] He determined that plaintiff's aortic aneurysm did not meet the criteria of listing of 4.10 because it "has been controlled through surgical repair" (Docket 6, p. 20) and that his mental impairment

---

[2]On the alleged disability onset date, the plaintiff qualified as an individual "closely approaching advanced age." During the pendency of his application, his age category changed to "advanced age." 20 C.F.R. 404.1563(e).

[3]This action is being remanded for further evaluation and therefore the court need not address the ALJ's failure to state the Listings that he considered for his knee or substance abuse disorder impairments but the court points out the deficiency for re-evaluation on remand.

did not meet Listings 12.04, 12.08 or 12.09. The ALJ found that the "paragraph B" criteria of 20 C.F.R. Part 404, Subpart P, App. 1 were not satisfied because the plaintiff experienced only mild restrictions of activities of daily living, moderate difficulties in maintaining social functioning, mild difficulties in concentration, persistence, or pace and no episodes of decompensation. Docket 6, p. 21.

Considering the entire record, the ALJ concluded that the plaintiff retained the Residual Functional Capacity (RFC) to perform a reduced range of light work in that he "can lift and carry 20 pounds occasionally and lift and carry 10 pounds frequently. The claimant is able to walk/stand for up to 6 hours out of an 8-hour workday. The claimant is able to sit for up to 6 hours out of an 8-hour workday. The claimant can occasionally climb stairs. The claimant is restricted from climbing ropes, scaffolds and ladders. The claimant can occasionally stoop, crouch, kneel and crawl. The claimant requires a sit/stand option as needed throughout the 8-hour workday. The claimant is limited to jobs that do not require close cooperation and interaction with co-workers. The claimant is able to maintain concentration for a minimum of 2 hour periods at a time. The claimant is able to adapt to changes in the workplace on a basic level." Docket 6, p. 21. The ALJ further found that the plaintiff's impairments "could reasonably be expected to produce the alleged symptoms" but that the plaintiff's statements concerning the intensity, persistence and limiting effects of the alleged symptoms were not credible to the extent they are inconsistent with the ALJ's RFC. Docket 6, p. 22.

Based on testimony of a vocational expert [VE], the ALJ held that plaintiff was unable to perform any past relevant work. Docket 6, p. 24. The VE testified that, with the limitations set out by the ALJ in his hypothetical, the plaintiff would be able to perform some unskilled jobs

performed at the light level of exertion such as production inspector (DOT #559.687-074) and assembler (DOT #706.687-010). Docket 6, p. 51-52. Considering plaintiff's age, education, work experience and RFC, the ALJ concluded that the plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy, and he therefore was "not disabled" under the Act. Docket 6, p. 25.

The plaintiff claims that the ALJ failed to consider all of his alleged impairments, specifically major depressive disorder, degenerative disc disease of the lumbar spine, isolated ectopy, postoperative left lower extremity paresthesias, meralgia paresthetica, chest pain due to non-union of the sternum, fatigue and arthritis of the knees. Docket 9, p. 6-7. He further claims that the RFC formulated by the ALJ was contrary to the opinions of the plaintiff's treating physician and consulting physician and resulted in an improper reliance on the testimony of the VE to find the plaintiff not disabled. Docket 9, p. 9- 15.

II.
STANDARD OF REVIEW

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[4] The burden rests upon plaintiff throughout the first four steps of this five-step process to prove disability, and if plaintiff is successful in sustaining her burden at each of the first four levels, then the burden shifts to the Commissioner at step five.[5] First, plaintiff must prove she is not currently engaged in substantial gainful activity.[6] Second, plaintiff

---

[4]*See* 20 C.F.R. §§ 404.1520 (2010).

[5]*Crowley v. Apfel,* 197 F.3d 194, 198 (5th Cir. 1999).

[6]20 C.F.R. §§ 404.1520(b) (2010).

4

must prove her impairment is "severe" in that it "significantly limits [his] physical or mental ability to do basic work activities . . . ."[7] At step three, the ALJ must conclude plaintiff is disabled if she proves that her impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.09 (2010).[8] If plaintiff does not meet this burden, at step four she must prove that she is incapable of meeting the physical and mental demands of her past relevant work.[9] At step five, the burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity, age, education and past work experience, that she is capable of performing other work.[10] If the Commissioner proves other work exists which plaintiff can perform, plaintiff is given the chance to prove that she cannot, in fact, perform that work.[11]

The court considers on appeal whether the Commissioner's final decision is supported by substantial evidence and whether the Commissioner used the correct legal standard. *Crowley v. Apfel,* 197 F.3d 194, 196 (5th Cir. 1999); citing *Austin v. Shalala*, 994 F.2d 1170 (5th Cir. 1993); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990). It is the court's responsibility to scrutinize the entire record to determine whether the ALJ's decision was supported by substantial evidence and whether the Commissioner applied the proper legal standards in reviewing the

---

[7]20 C.F.R. §§ 404.1520(c) (2010).

[8]20 C.F.R. §§ 404.1520(d) (2010). If a claimant's impairment meets certain criteria, that claimant's impairments are "severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 416.925 (2003).

[9]20 C.F.R. §§ 404.1520(e) (2010).

[10]20 C.F.R §§ 404.1520(g) (2010).

[11]*Muse*, 925 F.2d at 789.

claim. *Ransom v. Heckler*, 715 F.2d 989, 992 (5th Cir. 1983). The court has limited power of review and may not reweigh the evidence or substitute its judgment for that of the Commissioner,[12] even if it finds that the evidence leans against the Commissioner's decision.[13] In the Fifth Circuit substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999) (citation omitted). Conflicts in the evidence are for the Commissioner to decide, and if there is substantial evidence to support the decision, it must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The proper inquiry is whether the record, as a whole, provides sufficient evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994), citing *Richardson v. Perales,* 402 U.S. 389, 390, 28 L.Ed.2d 842 (1971).

### III.
### DISCUSSION

The plaintiff has not engaged in substantial gainful activity since July 31, 2006, satisfying step one. Docket 6, p. 32. The ALJ found at step two that plaintiff's diseases of the aortic valve, status post knee surgery, affective mood disorder, personality disorder and substance abuse

---

[12] *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

[13] *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

6

disorder[14] were severe impairments but, at step three, that the impairments did not meet the stringent requirements set out in the listings.[15] The ALJ further determined that the plaintiff retained the functional capacity for a reduced range of light work. Docket 6, p. 21 - 24. Although the ALJ found at step four that the plaintiff could not return to his past work, he concluded at step five that the plaintiff is capable of performing other work and is, therefore, not disabled. Docket 6, p. 24 - 25.

The plaintiff first argues that the ALJ erred at step two in failing to consider, among other limitations, the plaintiff's major depressive disorder. In assessing the plaintiff's mental impairments, the ALJ found that the plaintiff suffered from severe affective mood disorder, personality disorder and substance abuse disorder. The plaintiff argues that the ALJ acknowledged the consulting psychologist, Dr. Lane's, diagnosis of major depressive disorder but failed to consider it a "severe" impairment at Step 2, determining instead, without explanation or support in the medical evidence, that Mr. Wilkerson had a severe "affective mood disorder." Docket 9, p. 6. The Commissioner responds that the ALJ encompassed depression in his finding that the plaintiff suffered from a severe affective mood disorder. Docket 11, p. 8.

Under Listing 12.04, affective disorders are "characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome" and the required level of severity is met, under paragraphs A and B, when the plaintiff demonstrates that he has *both* medically

---

[14]The record does not support the ALJ's opinion that the plaintiff suffered from a severe substance abuse disorder impairment and appears to be a mistake by the ALJ in drafting his decision.

[15] *See Selders v. Sullivan*, 914 F.2d 614, 617, 619 (5th Cir. 1990), citing *Sullivan v. Zebley*, 493 U.S. 521, 110 S.Ct. 885, 891-92 (1990) (claimant bears the burden of proof to show medical findings that he meets each element of the listing).

7

documented depressive syndrome, and two of the following:

> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation, each of extended duration . . . . [16]

20 C.F.R. Part 404, Subpart P, App. 1, Listing 12.04.

After careful review of the record and the ALJ's decision, the undersigned finds that the ALJ considered the evidence of depression and properly evaluated it under Listing 12.04 as an affective disorder at step 2 of the sequential evaluation.

The plaintiff further argues that the ALJ, in formulating his RFC, improperly discounted the opinions of treating physician Dr. Miller and consultative examining physician Dr. Lane. Docket 9, p. 9- 15. The record indicates that the plaintiff has been treated by his family physician, Dr. Miller, since at least 2005 for multiple physical and mental problems, including depression. Docket 6, p. 314 - 352. Dr. Miller's treating source statement reported that the plaintiff would be expected to miss more than three days of work each month, would be distracted from job tasks for more than two hours in a typical 8 hour workday and could not sustain work for eight hours per day, five days per week at any job which would require standing/walking for six or more hours in an eight hour day. Docket 6, p. 435 - 436. Dr. Miller further stated: "This gentleman has diagnosis coronary artery disease, thoracic aortic aneurysm, and history of supraventricular tachycardia. He is recommended not to experience any stress,

---

[16] Alternatively, under paragraph C, the plaintiff could demonstrate "a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support," and, in relevant part, "[r]epeated episodes of decompensation, each of extended duration..." 20 C.F.R. Part 404, Subpart P, App. 1, Listing 12.04.

physical or emotional, at all. His cardiac prognosis is poor!" Docket 6, p. 436. The ALJ afforded little weight to the treating source statement of Dr. Miller because his opinion was "not consistent with his own treatment records or the treatment records from Cardiology Associates of North Mississippi." Docket 6, p. 24. In support of his decision to disregard Dr. Miller's opinion, the ALJ explained only that Dr. Miller did not refer the plaintiff back to a cardiologist for his heart condition and that his records indicate he "was doing pretty well" physically and "doing well as far as his mental health." *Id.*

The Fifth Circuit noted, in *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000), that there are several factors the ALJ must consider before declining to give evidence of a treating physician controlling weight:

> (1) the physician's length of treatment of the claimant,
> (2) the physician's frequency of examination,
> (3) the nature and extent of the treatment relationship,
> (4) the support of the physician's opinion afforded by the medical evidence of record,
> (5) the consistency of the opinion with the record as a whole; and
> (6) the specialization of the treating physician.

*See* 20 C.F.R. § 404.1527(d)(2). Social Security Administration Regulations provide that the SSA "will always give good reasons in [its] notice of determination or decision for the weight [it] gives the claimant's] treating source's opinion," and the regulations list factors an ALJ must consider in assessing weight given to the opinion of a treating physician when the ALJ determines that it is not entitled to "controlling weight." *See Id.* The regulation is construed in Social Security Ruling ("SSR") 96-2p, which states:

> [A] finding that a treating source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that

9

> the opinion is not entitled to "controlling weight," not that the opinion should be
> rejected. Treating source medical opinions are still entitled to deference and must
> be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927.

*Newton* at 456. According to the plaintiff, the ALJ did not evaluate the *Newton* factors, and the record does not contain any medical opinion contradicting Dr. Miller's opinion of the plaintiff's functional limitations. Docket 9, p. 12. The Commissioner responds that the ALJ "properly resolved the conflicts among the competing opinions" (Docket 11, p. 9) and argues that "the ALJ was not required to adopt Dr. Miller's disability opinion, as that opinion was not consistent with the objective medical findings, including the other medical sources' statements." Docket 6, p. 10 - 11.

The record contains a medical consultant review from Linda Baker, Ph.D. expressing the need for a mental status examination (Docket 6, p. 353) and a subsequent comprehensive mental status report from consulting physician, Dr. Lane, diagnosing the plaintiff with "major depressive disorder, recurrent, without psychotic features, moderate severity," "personality disorder, NOS, with dependent and passive aggressive personality features," "history of open-heart surgery, surgery on both knees, and two back surgeries." Dr. Lane recommended that alcohol abuse be ruled out and reported that the plaintiff "has the ability to perform routine, repetitive tasks," but "would have difficulty maintaining concentration and attention for more than 2 to 3 hours" and "would have problems interacting appropriately with co-workers and accepting supervision." Docket 6, p. 358, 445. Based on Dr. Lane's opinion, the ALJ foundthat the plaintiff could maintain attention and concentration for at least 2-hour periods and limited the plaintiff's RFC to jobs that do not require close cooperation and interaction with co-workers. Docket 6, p. 24. The ALJ afforded only "[s]ome, but not great weight" to Dr. Lane's diagnosis of a personality

10

disorder because the plaintiff has a "long history of supervising multiple employees" and because Dr. Lane's diagnosis of personality disorder was not documented in any other medical record. Docket 6, p. 24. The only other report contained in the record from a treating or consultative physician is a physical residual functional capacity assessment that does not address potential mental limitations.[17]

In the Fifth Circuit "a treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence." *Martinez v. Chater*, 64 F.3d 172, 175-76 (5th Cir. 1995); 20 C.F.R. § 404.1527(d)(2). Although a treating physician's opinion and diagnosis should be given considerable weight in determining disability, "the ALJ has sole responsibility for determining a claimant's disability status." *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990). "'[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion.'" *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987) (citation omitted). Good cause may exist to allow an ALJ to discount the weight of evidence of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence. *Newton v. Afpel*, 209 F.3d 448, 456 (5th Cir. 2000).

Under SSR 96- 5p, an ALJ must provide appropriate explanations when he does not grant the treating physician's opinions controlling weight. *Id.* In this case, the ALJ discounted the

---

[17]On January 2, 2007, Dr. Kossman provided a Physical Residual Functional Capacity Assessment addressing the plaintiff's aortic aneurysm and cardiac arhythimia. Docket 6, p. 299 - 307.

11

opinion of Dr. Miller, the only doctor who had treated the plaintiff, and did not specifically articulate his consideration of the criteria laid out in *Newton*. Although the Commissioner argues that the ALJ appropriately discounted Dr. Miller's opinion because it was not consistent with other medical findings and medical source statements, he does not identify the other medical source statements which support the ALJ's evaluation of the plaintiff's depression. As far as the court can determine, Dr. Lane's opinion is the only medical source statement contained in the record that addresses the plaintiff's mental limitations. Dr. Lane found that the plaintiff "would have difficulty maintaining concentration and attention for *more than* 2 to 3 hours," but the ALJ found that Dr. Lane's opinion was consistent with his determination that the plaintiff retained the ability to maintain concentration for *at least* 2 hour periods at a time. Dr. Miller opined that the plaintiff would be distracted from job tasks for *more than* two hours in a typical 8-hour workday.

Dr. Lane, of course, was a conservative examiner chosen by the SSA, not the plaintiff. He diagnosed the plaintiff with major depressive disorder and a personality disorder. His opinion, read as a whole, does not clearly contradict Dr. Miller's evaluation of the severity of plaintiff's depression and does not justify discounting his opinion, particularly given that the ALJ disregarded Dr. Lane's personality disorder diagnosis. A treating physician such as Dr. Miller has a unique perspective regarding the plaintiff's abilities, limitations, medical history and diagnosis and was entitled to deference as the only doctor treating the plaintiff for depression. In evaluating the severity of plaintiff's depression, the ALJ at least should have sought clarification from one or both of the doctors or requested an additional consultive examination.

An ALJ has a duty to contact a treating physician or other medical sources "[w]hen the evidence . . . receive[d] from [a] treating physician . . . is inadequate . . . to determine whether [a

claimant] is disabled." 20 C.F.R. §§ 404.1512(e), 416.912(e). These regulations further assure that "additional evidence or clarification *will* be sought" [emphasis added by the court] "when the report from [a] medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404.1512(2)(1), 416.912(e)(1). Additionally, "[a]n ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position.'" *Morgan v. Astrue*, 2010 WL 2697170, *8 (N.D.Tex. July 7, 2010), citing *Loza v. Apfel*, 219 F.3d 378,393 (5th Cir. 2000).

The ALJ should have requested an additional mental evaluation or sought clarification from Dr. Lane regarding the plaintiff's ability to maintain concentration due to depression. He could have requested that Dr. Lane complete the Psychiatric Review Technique form that Dr. Baker was unable to complete because of insufficient evidence. Docket 6, p. 360 - 372. Consequently, the ALJ did not satisfy his affirmative duty to develop the record.

Absent Dr. Lane's opinion, the record does not contain a completed mental medical source opinion. It is the ALJ's responsibility to determine the plaintiff's residual functional capacity, *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995), and in doing so he must consider all the evidence in the record, evaluate the medical opinions in light of other information contained in the record, and determine the plaintiff's ability despite his physical and mental limitations. *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995). However, the ALJ may not "substitute his own views for uncontroverted medical opinion." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999). The undersigned finds that the record contained no medical evidence supporting the ALJ's determination of the plaintiff's limitations due to depression and the ALJ failed to

13

demonstrate that he considered the *Newton* factors in discounting the opinion of the plaintiff's treating physician. Therefore, the ALJ's decision was not supported by substantial evidence and should be remanded for further development of the record.

## IV.
## PLAINTIFF'S REMAINING ARGUMENTS

Because this action is being remanded for further evaluation consistent with this opinion, the court need not address in detail the merits of the plaintiff's remaining arguments at this time.

## V.
## CONCLUSION

A final judgment in accordance with this memorandum opinion will issue this day.

**SO ORDERED**, this, the 21st day of June, 2011.

/s/ S. Allan Alexander<br>
UNITED STATES MAGISTRATE JUDGE